RAYMOND L. KROMEICH, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (3rd Division)   No. 1—92—0688

Opinion filed January 12, 1994.—Rehearing denied March 3, 1994.

TULLY, P.J., dissenting.

Victor D. Quilici, of Chicago, for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Frederick S. Rhine, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE CERDA delivered the opinion of the court:

Plaintiff, Raymond L. Kromeich, brought a replevin action to recover nine firearms seized by the Chicago police pursuant to chapter 8—20 of the Chicago Municipal Code (Chicago Municipal Code ch. 8—20 (1990)). The circuit court entered a judgment in favor of the City of Chicago (City). On appeal, plaintiff asserts that (1) municipal

ordinance section 8—20—040(b)(5) (Chicago Municipal Code § 8—20—040(b)(5) (1990)) is void for vagueness; (2) municipal ordinance section 8—20—220 (Chicago Municipal Code § 8—20—220 (1990)) is unconstitutional on its face in that it gives unlawful delegation of authority to the superintendent of police; (3) *People v. Ziomek* (1989), 179 Ill. App. 3d 303, 534 N.E.2d 538, was incorrectly decided; and (4) the trial court's decision is erroneous in that it misconstrues the safeguards under the State Constitution and applicable State law. We affirm.

On July 31, 1990, Chicago police officers A. Torres and G. Parker received information from an informant that plaintiff possessed unregistered firearms. The officers went to 1946 North Lockwood Street, Chicago, which is plaintiff's mother's house.

According to plaintiff, who is 61 years old and employed as a chauffeur for the director of Cook County Hospital, he resided in Wood Dale, Illinois, on July 31, 1990, and was temporarily staying with his mother. When plaintiff arrived at his mother's house at 6:30 p.m., the officers approached him and flashed a badge. After the police questioned plaintiff about his firearms, he voluntarily let the officers into the house and gave them eight rifles and shotguns, a .22-caliber revolver, gun cases, and a holster. Plaintiff then went to the police station with the officers, who gave him inventory receipts for the weapons.

Plaintiff testified that all the guns were registered in Wood Dale and he had valid State and Federal firearm identification cards. Plaintiff used the guns for hunting and target practice. He brought the guns to his mother's house three weeks earlier so that he could clean and oil them before having them insured. He was planning to then take them to his son's house, which was not in Chicago.

According to the testimony of both plaintiff and Officer Torres, plaintiff was never given his *Miranda* warnings and he was not arrested or charged with any crime.

On October 31, 1990, plaintiff filed a complaint in replevin seeking the return of the nine weapons. Following a bench trial and a hearing on plaintiff's motion for reconsideration, the trial court entered judgment in favor of the City.

On appeal, plaintiff asserts that Chicago's municipal ordinance section 8—20—040(b)(5) is so vague and uncertain that it violates due process rights. Section 8—20—040 of the Chicago Municipal Code states:

> "(a) All firearms in the city of Chicago shall be registered in accordance with the provisions of this chapter. It shall be the duty of a person owning or possessing a firearm to cause such firearm to be registered. No person shall within the city of Chicago,

possess, harbor, have under his control, transfer, offer for sale, sell, give, deliver, or accept any firearm unless such person is the holder of a valid registration certificate of such firearm.

\* \* \*

(b) This section shall not apply to:

\* \* \*

(5) Any nonresident of the city of Chicago participating in any lawful recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction; provided, that such weapon shall be unloaded and securely wrapped and that his possession or control of such firearm is lawful in the jurisdiction in which he resides." Chicago Municipal Code §§ 8—20—040(a), (b)(5) (1990).

Plaintiff claims that the ordinance does not clearly define "lawful recreational firearm-related activity" nor does it give any guidelines relating to time. Thus, plaintiff maintains that he did not have fair and adequate warning that he was required to register the firearms or was doing anything illegal. In addition, plaintiff argues that he falls within the exemption because he is a nonresident participating in the legal firearm-related activities of hunting and target shooting and the time frame of the exemption is "any reasonable amount of time."

In response, the State asserts that the ordinance is not vague because its language is unambiguous and self-explanatory. We agree.

■ Although legislative enactments carry a strong presumption of constitutionality and all doubts must be resolved in favor of their validity (*People v. Esposito* (1988), 121 Ill. 2d 491, 497, 521 N.E.2d 873), due process requires that a statute not be so vague that a person of ordinary intelligence must necessarily guess at its meaning. (*Opyt's Amoco, Inc. v. Village of South Holland* (1992), 149 Ill. 2d 265, 277, 595 N.E.2d 1060.) A law is not vague if it does not reach constitutionally protected conduct and is reasonably clear in its application to the complainant. (*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 71 L. Ed. 2d 362, 102 S. Ct. 1186.) Vagueness challenges must be examined in light of the facts of the case. (*United States v. Mazurie* (1975), 419 U.S. 544, 42 L. Ed. 2d 706, 95 S. Ct. 710.) In addition, a person who deals with dangerous firearms bears some of the responsibility for determining whether his possession of the weapons falls within the legislative prohibition. *United States v. Freed* (1971), 401 U.S. 601, 28 L. Ed. 2d 356, 91 S. Ct. 1112; *United States v. Drasen* (7th Cir. 1988), 845 F.2d 731.

■ We hold that section 8—20—040 of the Chicago Municipal

Code is not unconstitutionally vague. The ordinance does not involve constitutionally protected rights (see *Sklar v. Byrne* (7th Cir. 1984), 727 F.2d 633) and is reasonably clear in its application to plaintiff. The ordinance's language is unambiguous and self-explanatory. Although plaintiff's intended use of the firearms for hunting and target practices does not violate the ordinance, he clearly was not en route to or from hunting or target practice in another jurisdiction.

■ Next, plaintiff asserts that municipal ordinance section 8—20—220 is unconstitutional on its face because there is an unlawful delegation of authority to the superintendent of police. Section 8—20—220 states:

"Destruction of weapons confiscated:

Whenever any firearm or ammunition is surrendered or confiscated pursuant to the terms of this chapter, the superintendent shall ascertain whether such firearm or ammunition is needed as evidence in any matter.

If such firearm or ammunition is not required for evidence it shall be destroyed at the direction of the superintendent." Chicago Municipal Code § 8—20—220 (1990).

Plaintiff argues that this ordinance gives the superintendent unbridled discretion to destroy firearms without judicial determination of their classification as "contraband *per se*" in situations where there is no arrest or charges. Furthermore, plaintiff maintains that the Chicago city council did not give intelligible guidelines to ensure nonarbitrary enforcement and did not make a clear statement regarding retention of property seized or surrendered pursuant to the ordinance.

Plaintiff further argues that the ordinance unlawfully delegates discretionary power to the superintendent because he has the power to determine what the law shall be and to whom it shall be applied. Plaintiff relies upon *Village of Arlington Heights v. Schroeder* (1975), 28 Ill. App. 3d 1, 328 N.E.2d 74. In that case, the Village of Arlington Heights ordinance made it unlawful for any lot owner to permit an "improper growth of weeds or grasses." 28 Ill. App. 3d at 2.

The ordinance defined "improper growth of weeds or grasses" as "all weeds or grasses over 12 inches in height from the ground." (28 Ill. App. 3d at 2.) It also provided that "[l]ands under agricultural cultivation may be exempted from the ordinance upon written request to the Director of Health Services." (28 Ill. App. 3d at 2.) The court stated that the director of health had the discretion to determine whether a plant was a weed without any guidelines as to what constituted a weed. The court held that the ordinance was void because it constituted an unlawful delegation of legislative authority.

The director of health could determine whether any plant was a weed and therefore a violation of the ordinance would be based only on his decision.

In the case before us, section 8—20—030 of the Municipal Code contains a definition of a firearm and section 8—20—220 provides that the superintendent of police must destroy confiscated weapons not needed as evidence.

We reject plaintiff's argument. Contrary to his assertion, the ordinance does not delegate to the superintendent the council's inherent function of determining what the law shall be and to whom it shall be applied. Instead, it directs the superintendent to ascertain whether the seized firearms are needed as evidence. The superintendent's role is to contact the State, City, and Federal prosecutors to determine whether they plan to use the firearms as evidence.

The superintendent of police cannot make a decision as to whether a firearm is needed as evidence in a trial. That decision is properly one that a prosecutor makes on a case-by-case basis. The ordinance obligates the superintendent of police to inquire whether a firearm is needed as evidence. Once a firearm is no longer needed as evidence, the superintendent has no discretion, but must see that the firearm is destroyed. Thus, we conclude that municipal ordinance section 8—20—220 does not unconstitutionally delegate authority to the superintendent of police.

■ Next, plaintiff asserts that the trial court's decision is erroneous in that it misconstrues the safeguards under the State Constitution and applicable State law. Plaintiff contends that not only was the seizure without process and absent his consent, but he was not arrested or charged with a violation of any statute or ordinance. The trial court made a finding that plaintiff consented to the search and seizure of the firearms. Plaintiff and Officer Torres testified that plaintiff voluntarily let the police officers into his mother's house and voluntarily surrendered all the weapons to them. The trial court's finding of consent was reasonable and will not be overturned.

Plaintiff maintains that *People v. Ziomek* (1989), 179 Ill. App. 3d 303, 534 N.E.2d 538, on which the trial court relied, was incorrectly decided and should be either distinguished or overruled. The issue in *Ziomek* was whether the property was contraband *per se.*

■ There are two categories of contraband. Contraband *per se* includes property for which possession alone constitutes a criminal offense and does not need to be returned even if improperly seized. (*People v. Steskal* (1973), 55 Ill. 2d 157, 159, 302 N.E.2d 321.) Derivative contraband consists of property that is innocent in itself but

which has been used in the perpetration of an unlawful act. (*Steskal*, 55 Ill. 2d at 159.) The State may retain derivative contraband if it shows a rational relationship between the property and an unlawful purpose. *Ziomek*, 179 Ill. App. 3d at 307.

In determining the category of the seized property, it is vital to look at the purpose of a forfeiture provision. (*Ziomek*, 179 Ill. App. 3d at 307.) The Chicago firearms registration ordinance's preamble establishes that it is an attempt to limit the proliferation and convenient availability of firearms, thus promoting the health and safety of the citizens by reducing firearm-related deaths and injuries. (*Sklar v. Byrne* (N.D. Ill. 1983), 556 F. Supp. 736, 739, *aff'd* (7th Cir. 1984) 727 F.2d 633.) On the basis of those public policies, the Chicago city council enacted the firearms registration ordinance. *Ziomek*, 179 Ill. App. 3d at 308.

We find *Ziomek* to be controlling. In *Ziomek*, defendant was charged with unlawful use of weapons and charged under the Chicago Municipal Code with failure to register a deadly weapon and unlawful possession of fireworks. The weapon and ammunition were confiscated, but were later suppressed on fourth amendment grounds, and the arrest was quashed. The trial court ordered the seized weapons confiscated and destroyed, but later granted defendant's motion for the return of the weapons directing that they be returned outside the city borders. *Ziomek*, 179 Ill. App. 3d at 304-05.

On appeal, this court found that the arsenal was contraband *per se* and ordered the weapons to be destroyed. The court stated:

> "An illegally possessed weapon violating registration requirements does not fit into the derivative contraband mold. Instead, it resembles other contraband *per se* items such as counterfeit money and illegal narcotics. The focus changes from the manner in which the property was used by some individual, to the very nature of the property itself. The unregistered status of the gun is not a single, completed occurrence. Standing alone, the gun's lack of registration creates no individual, identifiable victim. Instead, the lack of registration continues as an ongoing condition. The weapon remains unregistered.
>
> Furthermore, the omitted gun registration requires no active conduct by defendant. The unregistered status remains ongoing, and the danger to be avoided by registering the weapons continues until the property is actually seized. The mere existence of the property presents danger. With contraband *per se*, the legislature or municipality seeks to protect society and potential victims of nonaccidental and accidental deaths and injuries resulting from the easy access to, and improper storage and use of, weapons and ammunition. As long as the unregistered gun is not seized, the

danger remains. The law of that jurisdiction seeks to remove all unregistered guns from society, not merely a single unregistered gun." *Ziomek*, 179 Ill. App. 3d at 309-10.

We agree with the *Ziomek* decision, which properly analyzes the applicable law and makes an informed decision. Thus, guns possessed within Chicago in violation of the municipal firearms registration ordinance are contraband *per se*. (*Ziomek*, 179 Ill. App. 3d at 309.) As such, they are forfeitable.

Plaintiff urges us to look to the case of *People v. Hermann* (1986), 150 Ill. App. 3d 224, 501 N.E.2d 842, for the proper disposition of this case. In *People v. Hermann*, the trial court properly granted the defendants' motion for the return of property seized from them pursuant to search warrants and consent searches, where they were not charged with any crime involving the seized property. The trial court held a hearing pursuant to section 108—1 *et seq*. of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 108—1 *et seq*.) and granted defendants' motions for the return of the property. The court held that the trial court was correct in ordering the return of the property seized based on the language of the statute, which stated: "If the person arrested is released without a charge being preferred against him all instruments, articles or things seized, *other than contraband*, shall be returned to him upon release." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 38, par. 108—2.) The property seized in *People v. Hermann* was not contraband whereas the property seized in the case before us is contraband. Therefore, that case is of no consequence here.

Based on the foregoing, the circuit court judgment is affirmed.

Affirmed.

RIZZI, J., concurs.

PRESIDING JUSTICE TULLY, dissenting:

I must respectfully dissent from the majority's conclusion that Chicago municipal ordinance section 8—20—040(b)(5) is not unconstitutionally vague.

In its opinion, the majority correctly sets out the standard against which vagueness challenges are to be measured. However, I believe the ordinance is vague with respect to the term "resident." Section 8—20—040(b)(5) provides no definition of who is a resident or, alternatively, who is a nonresident. Another unanswered question is, when does a nonresident become a resident of the City of Chicago? Does one become a resident by staying overnight, a few days, or a few

weeks in Chicago? Clearly, a line must be drawn somewhere but was not done by the city council.

It is fundamental to our sense of ordered liberty that a citizen be able to read the law, know what it means, and conduct his affairs in accordance with it. In the case *sub judice*, this was not possible due to the uncertainty over the term "resident" and, thus, I believe this ordinance is unconstitutionally vague and violative of the fourteenth amendment's due process clause.

Consequently, I would reverse the circuit court of Cook County.